IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYRONE VERNELL WHITE,

          Plaintiff,

    v.

MULTNOMAH COUNTY OREGON,
EMPLOYEES UNION, LOCAL 88 OF THE
AMERICAN FEDERATION OF STATE, COUNTY &
MUNICIPAL EMPLOYEES, AFL-CIO,

          Defendant.

No. CV 06-764-MO

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiff Tyrone Vernell White brings this action against defendant Multnomah County Oregon, Employees Union, Local 88 of the American Federation of State, County and Municipal Employees, AFL-CIO ("Union"), under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.* Specifically, he alleges the Union violated two provisions contained in Title I of the LMRDA, 29 U.S.C. §§ 411(a)(2) and (5), when its president removed him from his position as an appointed shop steward. The matters now before the court are Mr. White's Motion for Summary Judgment (#23) and the Union's Amended Cross-Motion for Summary Judgment (#33).

PAGE 1 - OPINION AND ORDER

For the reasons stated below, I deny Mr. White's motion and grant the Union's cross-motion.

## BACKGROUND

Mr. White is a member of the Union.  In 2004, he was appointed by Marla Rosenberg, the Union president at that time, to serve as shop steward for the Department of School and Community Partnerships ("DSCP"), a work group represented by the Union.  In January 2005, Rebecca Steward replaced Ms. Rosenberg as Union president.

In September 2005, after being laid-off for the summer, Mr. White returned to his duties as shop steward for DSCP.  Several union members in his department complained to him about an article in the July 15, 2005, Union News Letter.  The article, entitled "Tarred and Feathered: No labor in labor-management," criticized labor-management cooperation in DSCP, placing the blame on the management team.  DSCP Director Lolenzo Poe and the management team were singled out for taking action on a project without any input from the labor team.

Mr. White met with Val Andreas, the author of the article, and told her that he and others within his department were offended by the article as African Americans.  He asked her to retract the characterization and to apologize to his department.  Ms. Andreas responded that "Tar and Feather" originated in Europe and was not offensive.  A few months later, Mr. White met with Ms. Andreas and Union Executive Board member Jackie Tate and urged them to apologize to his department for being racially insensitive and to retract the article.

In late 2005, Ms. Tate requested that Ms. Steward remove Mr. White as shop steward for several reasons, including failure to attend shop steward meetings.  Towards the end of January 2006, Ms. Steward removed Mr. White as an appointed shop steward under Article VIII, § III of the Union's constitution.  That provision provides:

> Shop stewards shall be appointed by the president and shall be obligated to attend all shop steward meetings and all regular and special general membership meetings.  Any shop steward absent for more than four (4) meetings within one (1) years period, from date of appointment, may be subject to replacement at the

PAGE 2 - OPINION AND ORDER

discretion of the president.

While Mr. White does not dispute that he missed more than four shop steward meetings in each of the past couple of years, he contends Ms. Steward removed him from his appointed position as shop steward without procedural safeguards and in retaliation for his vocal opposition to the "Tarred and Feathered" article.

Since his removal, Mr. White continues to be a member of the Union and retains all rights of union membership, including the right to attend general membership meetings and to express his opinions in those meetings, the right to run for elected office, the right to vote for elected officers, and the right to vote to ratify collective bargaining agreements. He filed this suit on September 5, 2006, seeking declaratory relief, economic damages, punitive damages, and attorney fees and costs. The parties have filed cross-motions for summary judgment. Those motions are addressed below.

## STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the record in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting "forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotations marks and citation omitted).

## DISCUSSION

Mr. White asserts two claims against the Union under the LMRDA: (1) the Union

PAGE 3 - OPINION AND ORDER

violated § 411(a)(5) by failing to provide him with notice and a hearing before removing him from his appointed position as shop steward; and (2) the Union violated § 411(a)(2) by removing him from his appointed position for exercising his free speech rights in opposing the "Tarred and Feathered" article.  Mr. White moves for summary judgment only on his first claim, arguing under the plain language of the statute he is entitled to judgment as a matter of law.

In its cross-motion, the Union contends both claims fail as a matter of law and that Mr. White's complaint should be dismissed in its entirety.  The Union argues § 411(a)(5) protects only union membership rights and does not provide appointed Union employees with procedural safeguards.  Similarly, the Union asserts § 411(a)(2) does not protect a union member who seeks to retain an appointed union position.  I address the arguments in turn below.

I.      Procedural Safeguards under 29 U.S.C. § 411(a)(5)

Mr. White argues his removal as an appointed union employee constitutes discipline under § 411(a)(5) and entitles him to its procedural protections.  I disagree.

Under § 411(a)(5), a union member may not be "fined, suspended, expelled, or otherwise disciplined" unless he has been (1) "served with written specific charges," (2) "given a reasonable time to prepare his defense," and (3) "afforded a full and fair hearing."  In *Finnegan v. Leu*, 456 U.S. 431, 438 (1982), the Supreme Court discussed the scope of § 411(a)(5), finding that it does not protect a union member's status as an appointed union employee or officer.  The court explained that the procedural safeguards outlined § 411(a)(5) apply only to those disciplinary actions that affect a union member's rights or status as a member of the union.  *Id.*

In *Finnegan*, two union-appointed business agents brought an action under the LMRDA challenging their removal from office by the union's newly elected president.  *Id.* at 433.  The plaintiffs had openly campaigned for the losing presidential candidate and were removed from office shortly after the election.  *Id.* at 433-34.  The plaintiffs argued (1) their removal as appointed union employees constituted "discipline" under 29 U.S.C. § 529, and (2) their removal as appointed union employees was unlawful because it was predicated upon the exercise of their

free speech and voting rights guaranteed under § 411(a)(2).[1]  *Id.*  Although the business agents were both members and employees of the union and had a protected right to campaign for the union president of their choice, the court, after reviewing the legislative scheme of the LMRDA, concluded that Congress sought only to protect rank-and-file union members and not union officers or employees.  *Id.* at 436-37.

Specifically, the court noted that § 411(a)(5) has nearly identical language to that of § 529, and that § 411(a)(5)'s procedural protections apply only to those actions affecting membership rights and not to those affecting a member's status as an appointed employee.  *Id.* at 438.  The court, therefore, held that "removal from appointive union employment is not within the scope of . . . § [529]."  *Id.* at 439.  The court explained that removal from appointed union employment "does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen also to be union employees."  *Id.* at 438.

Next, the court considered whether the plaintiffs' removal from their appointed positions

---

[1] Section 529 provides:
> It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section.

Section 411(a)(2) provides:
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

PAGE 5 - OPINION AND ORDER

violated any rights secured by Title I, specifically §§ 411(a)(1) and (2).  Concluding that Title I does not "restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own," the court similarly held that the agents had failed to establish any violation of Title I.  *Id.* at 441-42.  The court relied on the LMRDA's "overriding objective" to "ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections."  *Id.* at 441.

Here, it is undisputed that Mr. White still enjoys full union membership rights and status.  His removal did not affect those rights.  Thus, under *Finnegan*, I find his removal as an appointed shop steward is not a disciplinary action that entitles him to the procedural safeguards of §101(a)(5) because it did not affect his membership rights or status.

Mr. White also argues Article VIII, § 3 of the Union's constitution, which provides for the removal of appointed shop stewards, is inconsistent with § 411(a)(5) because it does not provide for procedural safeguards before removal.  I also reject this argument.  Section 411(a)(5) requires no such safeguards for the removal of appointed union officials.  As such, the Union's constitution's is not required to provide such.

Accordingly, I deny Mr. White's motion for summary judgment and grant the Union's cross-motion for summary judgment on this claim.

II.    Free Speech Protection under 29 U.S.C. § 411(a)(2)

In his second claim, Mr. White contends the Union violated § 411(a)(2) because it removed him from his appointed position for exercising his freedom of speech in opposing the "Tarred and Feathered" article.  Similar to its previous argument, the Union asserts it is entitled to summary judgment on this claim because § 411(a)(2) does not protect a union member who seeks to retain an appointed union position.  I agree with the Union's position.

Although § 411(a)(2) provides that every member of a union "shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions," these protections are not coextensive with those of the First Amendment.  *Ackley v. W.*

*Conference of Teamsters*, 958 F.2d 1463, 1475 (9th Cir. 1992).  The purpose of § 411(a)(2) is to provide basic and fundamental rights to union members while, at the same time, avoiding undue judicial interference with union self-governance.  *Id.*

   While the parties do not dispute the substance of § 101(a)(2), they do dispute its application in this case.  The dispute stems from two Supreme Court cases that distinguished between the scope of Title I protections provided to *appointed* union officials or employees as opposed to *elected* union officials.  Those cases are *Finnegan*, discussed previously, and *Sheet Metal Workers' International Association v. Lynn*, 488 U.S. 347 (1989).  Mr. White contends *Lynn* controls this issue, whereas, the Union argues *Finnegan* controls.  I hold *Finnegan* controls.

   As mentioned above, in *Finnegan*, the court considered whether the removal of *appointed* union employees or officials violated the LMRDA.  In *Lynn*, the court considered whether the removal of an *elected* union official, who was removed as a direct result of his vocal and public disagreement with a dues proposal at a special union meeting, violated the LMRDA.

   In that case, there was no dispute that the plaintiff, an elected union official, was removed in retaliation for his opposition to a dues proposal.  *Lynn*, 488 U.S. at 350.  The district court granted the union's motion for summary judgment under *Finnegan*.  *Id.* at 350-51.  The Ninth Circuit reversed, finding that *Finnegan* did not control where the union employee was an elected rather than an appointed official.  *Id.* at 351.  The Supreme Court affirmed, holding that the plaintiff's retaliatory removal stated a cause of action under the LMRDA.  *Id.* at 355, 359.  In distinguishing *Lynn* from *Finnegan*, the court explained that removal of an elected official is much different from that of an appointed official.  *Id.* at 355.  Such removals cut against the LMRDA's purpose to ensure that unions are democratically governed because they deny union members the representative of their choice and because of their chilling effect on Title I free speech rights of the removed official and of the members who voted for that official.[2]  *Id.*

   _____

   [2]Mr. White relies heavily on Justice White's concurrence that he did not like resolving such cases on whether the union officer was elected or appointed.  *Id.* at 360.  However,

Thus, the issue for Mr. White's second claim is similar to that of his first claim–whether his membership rights in the union were directly infringed by his removal as an appointed shop steward. *Finnegan*, 456 U.S. at 437; *see also Franza v. Int'l Bhd. of Teamsters, Local 671*, 869 F.2d 41, 47 (2d Cir. 1989).

As previously noted, Mr. White has simply provided no evidence that his removal as an appointed shop steward affected or directly infringed his union membership rights or status. However, he may still assert a Title I free speech claim if he can show that he was removed as "part of a purposeful and deliberate attempt . . . to suppress dissent within the union." *Finnegan*, 456 U.S. at 441 (internal quotation marks omitted). This requires him to show by clear and convincing evidence that his removal stemmed from a scheme to suppress union dissent. *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 184 (2d Cir. 1998). Mr. White only alleges that his removal stemmed from a scheme to suppress dissent. This allegation, with nothing more, does not meet his burden of clear and convincing evidence.

Accordingly, I find that Mr. White has no cognizable Title I claim under § 411(a)(2). I therefore grant the Union's motion for summary judgment on this claim.

## CONCLUSION

Based on the foregoing, I deny Mr. White's motion for summary judgment and grant the Union's cross-motion for summary judgment.

IT IS SO ORDERED.

DATED this __29th__ day of May, 2007.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Court

---

Justice White's position has not been adopted by the court or any circuit as the better statement of the law.

PAGE 8 - OPINION AND ORDER